As well, if either of my colleagues or I are asking you questions and the time has run out, please finish answering the questions, even if it's a hard question. You can't say my time's up and run back to your desk. But on the other hand, feel free to finish answering the question if we're in the middle of it because I want to make sure my colleagues have an opportunity and I have all our questions answered because we want to make sure before we decide your case we've asked all our questions. So good morning. Good morning, and may it please the Court. I'm Assistant Federal Defender Craig Jerome, appearing on behalf of Mr. Cai. With the Court's permission, I'd like to reserve two minutes for rebuttal, if possible. Okay. Obviously, the key issue in this case is whether the district court reversibly erred when it allowed the government to prove alleged probation violations against Mr. Cai by introducing hearsay statements of the alleged victims of Mr. Cai's conduct, his wife and mother-in-law. Obviously, this case involves the Comedo-Simmons right cause weighing test in terms of the introduction of hearsay. Well, it's a probation violation, right? Yes. So on a probation violation, we're not talking about the exact same thing that we're talking about in a trial. So certain hearsay can come in, but depending on analyzing it. And I noticed that the Court mentioned Comedo, but also did a confrontation analysis as well, right? Yes. So the confrontation analysis is actually more advantageous to you, but under either of those, the Court went against you, correct? That's correct. And, you know— Just to make sure, it's been a long week. So when you say yes in response to Judge Callahan, you mean, I think, more advantageous, meaning it's a higher bar. Yes. Okay. And what's important to remember is what Valdivia v. Schwarzenegger says, is that even if the hearsay is otherwise reliable and might be admissible at trial, the Court still needs to conduct the right cause balancing evaluation of the hearsay. Right. So my understanding from your briefing is that the judge satisfied herself, maybe by applying the Crawford test or the excited utterance exception. She looked at the reliability of the statements, and you're concerned about the other side of the equation? Yes. And I'm also concerned not only about the reliability of the statements, but Valdivia also says reliability isn't enough. The government still needs to provide some explanation of their cause for not calling the witness. And wasn't that explanation provided here, given the fear that was expressed by Ms. Chai and her mother? Well, that was actually. And, in fact, her counsel indicated to the government that she would not testify. She was going to try to invoke the marital privilege. Isn't that a pretty good indication? Which is inapplicable in this case because she's the victim. But it shows her unwillingness and fear. I don't know if it shows anything having to do with fear. What I intended to begin with was actually by going to the cause analysis. And what the district court, its entire analysis of the government's good cause in its written order is two sentences. The court says on page 8 of the electronic record, the government has shown good cause for denying the defendant the right to confront Ms. Lye and Ms. Lowe at the revocation hearing, which is that both witnesses fear for their safety. It's not a case of mere inconvenience or expense, but the altogether unfortunate and familiar difficulty of securing testimony from victims. It's a pretty classic case of domestic violence. I mean, anyone that's handled domestic violence cases knows it's not uncommon to have recantations after. But in the 911 call, I would say, shouldn't that be evidence alone if it came in as an excited utterance or something that if the court believed it as such, that could be enough, right? Well, the problem is that there was no right cause balancing done at all in the 911 call. But if we decide, I've listened to the tape, I'm sure my colleagues have, of the 911 tape. If I decide that she sounds frightened, and I'll tell you that I think she sounded frightened, there was like two months later, right, to the hearing. So your argument is we don't have a record about whether she was frightened, still frightened and willing to testify then, is that right? Yes. Okay. So because I've done a lot of work with domestic violence as well as a former state court judge, so that seems to be very well established. I was looking here to see whether there's a history of domestic violence. Was the judge aware or told anything about whether this couple had a history? Well, the only person in this case who apparently spoke to Ms. Lai, the wife, was the pretrial services officer. We know the probation officer never talked to her. Apparently the AUSA never talked to her. And when the pretrial services officer talked to Ms. Lai, she said, this has never happened before. So who was it that talked to her when he was going to get out of jail? Because I think there's the 911 tape, and then there's the statement that you just referred to, and there's also a contact made to her when he was going to be released from jail, and she expressed some apprehension about having him come back home. She was concerned that he would be angry with her because he had spent a week in jail. Who was that contact? That was the pretrial services officer. I thought you just said the pretrial services officer hadn't talked with her. The probation officer hadn't spoken to Ms. Lai. Oh, I got that backwards. Okay. And so are there, other than those three bullet points, are there any other indicia of fear? No. And the problem with this case, or one of the issues I see in this case, is you can't have a blanket exception for domestic violence cases. You can't say in every domestic violence case or alleged domestic violence case, we're going to say the government doesn't have to call the witness or the victim or the alleged victim because we know that in some domestic violence cases, or a lot of domestic violence cases, the victim is fearful of her attacker. Did the government rely on the marital privilege to not, as a reason for not having called these folks or subpoenaing them? The government, at the July 18th hearing, which was the second evidentiary hearing, second scheduled evidentiary hearing, says that we spoke to Ms. Lai's attorney, and Ms. Lai indicated, or the attorney indicated that Ms. Lai had indicated that if she was subpoenaed, she would try to assert the marital privilege. The court apparently didn't rely on that because it's not in the order, and we know that the marital privilege, adverse spousal testimony privilege, doesn't apply in this situation because it doesn't apply when the spouse is the victim of the alleged conduct. It wouldn't apply to the mother-in-law. Forgive me, go ahead. No, go ahead. That was it. I'm done. So why aren't you just asking us to apply the standards had this been a jury trial? I mean, obviously it's a probation violation, it's a different standard of proof, and there are different rules that apply. I mean, and that's what seems to be unfortunate for your client. If this had been a jury trial and the exact same thing had happened, your arguments would be stronger, right? I think my arguments would be stronger, but what Valdivia says is, what Valdivia talks about is hearsay exceptions and why in this context we don't just say this falls within a hearsay exception, so we're going to let it in. Some circuits do say that, but this circuit very clearly does not say that. And the reason why is there are additional protections in the jury trial context that don't apply in this context. There's this prohibition against introducing testimonial hearsay, there's a 401-403 balancing test. So in this case, if this was a jury trial, the judge might say, yes, we have this 911 call, but we also have statements from the person who made the 911 call, subsequently disavowing what happened in the 911 call. So the judge may say, look, government, if you're not going to call the person who made the 911 call, and you have no reason for not calling that person, really, I'm not going to let this in because that's unduly prejudicial or it would confuse the jury if the jury is not going to find out that this person subsequently made recantations of what happened in the 911 call, and more importantly, the defendant doesn't have the opportunity to cross-examine the person about the reasons why they made those subsequent recantations. And I see my time is up. Well, do you want to just save the time for rebuttal? Sure. So I do have one other question, which isn't on the clock here. So are parties as excited when you come from Honolulu to Pasadena as when we get to go from here to Honolulu to hear a case? This is a beautiful courtroom. I'm very impressed. You have a nice courtroom, too. Thank you. Good morning. Good morning. May it please the Court, my name is Marion Purcell. I'm an assistant U.S. attorney in the District of Hawaii, and this is a gorgeous courthouse. And so on that note, I agree with my adversary, but I think we're missing a few points that we need to focus on in this case. One thing that maybe gets a little bit lost here is that the 911 call is more than just admissible hearsay. It's also non-testimonial. And as a non-testimonial, it is hearsay, but it is admissible hearsay, and it is non-testimonial. That just gets you to reliability, right? It certainly goes to reliability, but it also goes to the existence of a right to confrontation. But you're saying that would be admissible in a trial as well in this proceeding? It's not just admissible hearsay, as many hearsay exceptions are, but because it is non-testimonial under Davis v. Washington, in a trial setting there would be no confrontation. But we have to go through a balancing test under Comito here. And so the question is, let's say we assume, we agree with you, that the factors are very strong on the reliability factor. Because of all the things you say, it survives confrontation clause, it survives a couple of prongs of non-hearsay, it's done instantaneously, close in time, excited utterance, et cetera, et cetera. But you would agree that there has to be some showing on good cause on the other side of the equation, wouldn't you? Or are you saying that any call under these circumstances would require no justification or no showing of good cause on the part of the government? I believe that we win either way. But I think that there is a good argument that we don't need to do the balancing test here. I'm not sure that matters, because once we do the balancing test, the government wins. What is the reason for that? Because, look, what it says in Comito is that in determining whether the admission of hearsay evidence violates the releasee's right to confrontation in a particular case, the court must weigh the releasee's interest in his constitutionally guaranteed right of confrontation against the government's good cause for denying it. I concede absolutely that with respect to the police reports, there is absolutely a constitutionally guaranteed right of confrontation. I can't concede that with respect to the 911 call, because if this were a trial there would be no right to confrontation. Valdivia does absolutely say that in the case even of admissible hearsay, the balancing test has to go forward, as my adversary points out. But it's not clear to me from Valdivia that that necessarily applies where the admissible hearsay is also non-testimonial. Valdivia mentions non-testimonial evidence but doesn't clearly rule, and it's certainly not an issue before the court. It doesn't clearly rule. The district court in Section 1 mentioned Comito, right? And in Section 2, the district court does the confrontation analysis, right? But Comito is not unmentioned, right? Oh, correct. And the court is perfectly aware of the Comito balancing test. Yes. So my position is ‑‑ I'm cutting off a much bigger piece of the pie here. Are you really asking us to rule that she could have bypassed Comito? Only with respect to the 911 call, Your Honor, not at all. You want us to rule? Yes, Your Honor, I do. I believe that that is what the law should be because I don't believe that the confrontation rights in a revocation proceeding should be greater than the confrontation rights at trial. So are you asking us to make new law? I believe I am, Your Honor, yes. Sure, too. Just wanted to be clear. Yeah, I believe I am. I'm not suggesting that there is any Ninth Circuit case that holds that. I appreciate the clarification. I just don't believe that Valdivia holds to the contrary either. And that would apply even when there's a recantation? Yes. No matter what the circuit, even if the recantation occurred within six hours? Yes, Your Honor. As long as there's a 911 call and because it survives confrontation as well as hearsay, the government wins. Again, it has to be non-testimonial. By definition, a 911 call is going to be non-testimonial. We know that. A portion of them are. The Supreme Court has been clear that a 911 call itself can segue into something that's testimonial. It almost always will. But it did not here. I didn't mean to interrupt. Forgive me. I'm sorry. I'm the one who will assume an apology. But I just wanted to follow up on Judge Chen's question. You really are advocating what opposing counsel said. Why would there be a domestic violence exception? And that's really what you're asking for. Because that's the way that's going to play out in all these cases where, or I shouldn't say all, that would be a common occurrence where we have this domestic violence cycle which is really, and we've acknowledged, a domestic violence incident and then a recantation. That's how that's going to play out. And that's really concerning to me. He makes an argument, opposing counsel, makes an argument about the recantation that I thought was noteworthy. And that is that one could recant because one is afraid and has been a domestic violence victim or one could recant because one has falsely testified. And either way, that person could be frightened in the aftermath. So I'm concerned about that. Could I get your response? I have no dispute with that, Your Honor, that under some circumstances, and one has to look, and the case law is clear about that, at the specific facts of this case. I do not believe that there is a domestic violence exception. What I believe is that the facts of this case so strongly indicate the  your time is ticking. If I could get you to the part that's bothering me, it might help. I don't think the reliability of the original call is my hang-up. The government has to show under Comito, why aren't we bringing this person who's local? We know right where she is, and there's two of them, by the way. One of them doesn't begin to have a marital privilege. Why aren't those folks being subpoenaed to testify two months later? There are essentially two reasons in this case. One is the reliability, and the case law is clear that that is a factor. We've got that. Is there a history of domestic violence with these parties? There's no evidence in the record of that. There may have been, but there's no evidence in the record of a history at all. The way that the record reads, it appears as if it came out of nowhere. What's the second reason that you were trying to get to? Unavailability only in the sense of unwillingness. We know that, and I shouldn't say it's only that. Both of these witnesses were clearly unwilling to testify in the revocation hearing. When you say clearly, where do we know that? How do we know that? We know that for a couple of reasons. We know that because we know they had recanted, both of them. Doesn't mean they're not willing to testify. For two different things. Yes, let me get to that in half a second. We know that they recanted, and we also know that Ms. Lai's attorney had said that she would refuse to testify. So we have that expressly. With respect to the recantation, it seems to me that once they have, in fact, recanted, and we have nothing in the record that indicates that that's not the case, the government knows that if the government puts those witnesses on the stand, they are not going to testify consistently with the original statement. They are no longer, in fact, adverse to the defendant at that stage. You know what they are if they've recanted. That's the whole point. That's his argument. We don't know what they'd say. That's fair. But at this point, since we have met our Brady obligation to disclose that fact, that they've recanted, that they will not, to the best of our knowledge, support the original story, at this point the witness is available to both sides. What we have is a situation in which we have a highly reliable initial statement based on all of the circumstances and an unwillingness to testify on the part of these witnesses. So do you think that, I guess the whole thing based on what my colleagues, I mean, we don't discuss these cases before we come in. So it's like they express what their views are or it can even be hypothetical questions. Do you think that let's just assume that your argument that the initial statement was enough and that we don't need to go any further. Did the district court make a committee analysis here? With respect to the police report, she did expressly make that analysis. With respect to the 911 call, she did not articulate it because she understood it. I assume that she did that silently. And she recognized the importance of the reliability of that 911 call, the fact that there is no confrontation right with respect to that 911 call. Is there anything in the record that shows what efforts were made to secure the testimony of either Ms. Lye and Ms. Lowe? Other than the fact that there was communication with Ms. Lye's attorney, there is nothing in the record, to my knowledge, that indicates that the government passed understanding that these witnesses had recanted. There's no indication that the government continued to pursue their testimony. But we don't have anything for the mother-in-law. Other than the mere fact, and I think it's significant, of the repantation. Did the defendant call any witnesses? The defendant did not call any witnesses and did not choose to testify. The defendant offered two exhibits, which are at ER 77 and ER 79, which are the emails that indicate that Ms. Lye, indicate some information about Ms. Lye's state of mind at that time. You're over time. Thank you. Thank you. Thank you. Obviously I'll be brief. So I want to talk a little bit about the reliability of the 911 call because I think that that really segues into why confrontation was so important in this case. Part of the reason why we're saying the 911 call, or people are saying the 911 call is so reliable, is because you got to listen to the call. You didn't get to see the witness, but you got to hear them. You got to hear their emotions. You got to hear exactly what they said. Now imagine that 911 call, instead of getting to listen to it, you read a transcript of it. Would that have less impact? Now imagine that 911 call, instead of reading a transcript of the 911 call, you had the 911 operator come in and testify about what Ms. Lye had told her over the phone. Now imagine instead of that happening, you have before the court an email from the 911 operator summarizing in brief what Ms. Lye told her about what Ms. Lye said during the 911 call. So it's just a parade of horribles that didn't happen? Is that what you're saying? No, what I'm saying is that's what we have for the recantation. We have an email from a prosecutor who's biased, and the judge is saying I'm finding the 911 call credible, and I'm not finding the recantation credible based on a cold record because Mr. Chai never had the opportunity to confront these witnesses, to have the judge see their demeanor when they testified. He never got to ask them any questions about their reasons for their recantations. Did Mr. Chai have the opportunity to exercise the right of subpoena to have Ms. Lowe or Ms. Lye testify? He did, but it's not Mr. Chai's burden in this case. And in order to preserve an issue for the court's error, I don't think Mr. Chai is obligated to then cure the court's error by calling the witness that the court allowed the government to refuse to call. So the burden is affirmatively on the government to satisfy both sides of the Camino test? Yes. And that's my time, so if there's no further questions, thank you. Are there any other arguments? If not, it will stand submitted.
judges: Callahan, Christen, Chen